FILED

2012 Oct-29  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CATEESHIA JONES,                    )
     Plaintiff,                    )
                      )
     vs.                            )      4:11-CV-03473-LSC
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
     Defendant.                    )

MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Cateeshia Jones, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Jones timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Jones was twenty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she was educated through at least a portion of the twelfth grade. (Tr. at 57, 99.) Her past work experiences include employment as a cook, nurse assistant, waitress, and retail cashier. (Tr. at 30, 42.) She claims that she became disabled on August 4, 2006, due to scoliosis of the lumbar spine, herniated discs at L4-L5, chronic left hip and back pain, arthritis, depression, anxiety-related

disorders, and migraine headaches.  (Tr. at 32.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Jones meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 50.)  He further determined that Ms. Jones has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*)  According to the ALJ, Plaintiff's spinal stenosis, degenerative disc disease (cervical and lumbar), osteoarthritis/degenerative joint disease (left hip), history of left hip fracture, bipolar disorder, and anxiety disorder are considered "severe" based

3

on the requirements set forth in the regulations.  (Tr. at 50-52.)  However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (Tr. at 52-53.)  The ALJ did not find Ms. Jones' allegations to be totally credible, and he determined that she retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [She] can perform posturals only occasionally; she must be allowed the opportunity to alternate sit/stand positions at one hour intervals; she is limited to unskilled, simple work with few workplace changes; and she can only be required to interact with the public, co-workers and supervisors occasionally, i.e., up to two hours during an 8-hour workday.

 (Tr. at 53-55.)

According to the ALJ, Ms. Jones is unable to perform any of her past relevant work, she is a "younger individual," as that term is defined by the regulations, and she has at least a high school education and is able to communicate in English.  (Tr. at 55-56.)  He determined that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  (Tr. at 56.)  However, the ALJ determined that, considering

Plaintiff's age, education, RFC, and work experience, and based on the testimony of a Vocational Expert ("VE"), there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembler, inspector/checker, and machine packer. (Tr. at 56-57.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 57.)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Ms. Jones contends that the ALJ's decision should be reversed and remanded for many reasons.  She first argues that the ALJ's decision was not based on substantial evidence because: 1) the ALJ should have found that she had additional severe impairments at step two of the sequential evaluation, particularly, chronic hip and back pain and migraine headaches; 2) the ALJ erred at step three of the sequential evaluation by finding that her impairments do not meet section 12.04 of the Listing of

Impairments; 3) the ALJ improperly drew adverse inferences from the lack of medical evidence in the record; and 4) the hypothetical question the ALJ posed to the VE did not accurately state her impairments and limitations.  Plaintiff also argues that the ALJ's decision was not based on substantial evidence when considering the additional evidence she submitted to the Appeals Council.  Relatedly, Plaintiff has filed a separate motion to remand her case to the Commissioner under sentence four of § 405(g) for consideration of new evidence that she says she submitted to the Appeals Council but that the Appeals Council did **not** include in the record.  (Doc. 12.)  All of these issues have been briefed by both parties and are now ripe for decision.

A.      The ALJ's Finding at Step Two Concerning Severe Impairments

Plaintiff argues that the ALJ should have found that she had additional severe impairments, particularly "severe migraine headaches and chronic left hip and back pain resulting from an accident on 8/4/06." (Doc. 13 at 1.)  As an initial matter, the ALJ did find that Plaintiff had multiple severe impairments, including spinal stenosis, cervical and lumbar degenerative disease, osteoarthritis/degenerative joint disease of the left hip, history of left hip fracture, bipolar disorder, and anxiety disorder.  (Tr. at 50.)  The ALJ thus found in Plaintiff's favor at step two of the sequential evaluation process and properly proceeded to the next step.  (Tr. at 50-57.)

A "severe impairment" is one that "significantly limits [the] claimant's physical or mental ability to do basic work activities." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the [Social Security] Act." *McDaniel v. Bowen*, 800 F.2d at 1026, 1030 (11th Cir. 1986).  The Eleventh Circuit has stated that more important than the name or diagnosis given to a particular impairment is the question of the extent to which a claimant's impairments limited her ability to work. *See Gainous v. Astrue*, 402 F. App'x 472, 475 (11th Cir. 2010) (holding terminology ALJ used to describe medical condition had no effect on ALJ's determination whether claimant was able to work); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits the claimant's ability to work, nor does it undermine the ALJ's determination regarding her ability to work.") (internal quotation marks omitted).

Plaintiff offers no argument in support of why the ALJ should have found that "chronic left hip and back pain" was severe in that it limited her ability to work, or why this impairment is different from the ALJ's finding that "spinal stenosis, cervical and lumbar degenerative disease, osteoarthritis/degenerative joint disease of the left hip, [and] history of left hip fracture" were severe.  (Tr. at 50.)  Any such argument

Plaintiff may have had, therefore, is waived.  *See Con't Tech. Servs. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (finding "simple contention" without citation to authority or reasons therefore is tantamount to waiver).

With regard to the migraine headaches, while the record reflects that Plaintiff reported a history of headaches, there is no medical evidence in the record suggesting that Plaintiff's headaches were limiting as she claims.  When a plaintiff attempts to establish disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. § 404.1529.

Plaintiff sought emergency medical treatment for intractable headaches after a myelogram at Gadsden Regional Medical Center ("GRMC") on September 11, 2008. (Tr. at 402-612.)  Following her myelogram, Plaintiff received two blood patches, but she continued to complain of a headache. (Tr. at 495-96.)  Dr. Terry M. Andrade, the physician who ordered the myelogram, felt Plaintiff should be discharged. (Tr. at 540.)  However, Plaintiff refused to be discharged from the emergency department, and her primary care physician, Dr. Oluwole Akisanya, agreed to admit her. (Tr. at 542.)  As the ALJ noted, objective medical testing failed to reveal the cause of

9

Plaintiff's headaches. (Tr. at 51.) A CT scan of Plaintiff's head revealed no significant abnormality. (Tr. at 493.) On September 18, 2008, an MRI of Plaintiff's brain was normal, and no etiology for her headaches could be identified. (Tr. at 418.) The ALJ also noted that on September 17, 2008, Dr. Seth G. Spotnitz of the GRMC found that, despite Plaintiff's complaints of a severe headache, she appeared "to be in [no] distress whatsoever," and he questioned whether Plaintiff was "malingering with secondary gain." (Tr. at 51, 499, 502.)

Plaintiff again complained of headaches during an October 2008 trip to the GRMC for a urinary tract infection and vaginal infections, but there was no mention of treatment for her headaches. (Tr. at 621-39.) Nearly a year later, on August 24, 2009, Plaintiff presented to the emergency room at the GRMC, complaining of a headache, among other things. (Tr. at 707-23.) Dr. Akisanya diagnosed her upon admission with "headache, to rule out migraine headache." (Tr. at 707.) Upon a neurological examination, Plaintiff was found not to be in any obvious distress, and it was recommended that she be discharged. (Tr. at 713.) It was felt by Dr. Spotnitz at the time that she was "drug seeking for her headaches as she has appeared in no acute distress, though complaining of severe headache." (Tr. at 712.)

In addition to the medical evidence of record, Plaintiff's own statements

undermine her allegations of disabling headaches.  Plaintiff testified at her 2009 hearing that she took only over-the-counter medication for her headaches, which suggests that her headaches were controlled and thus were not disabling.  (Tr. at 35-36.)  *See* 20 C.F.R. § 404.1529(c)(3)(iv); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. June 5, 2006) (holding ALJ correctly found claimant not credible, in part because his condition was controlled with medication).  Plaintiff also did not report any limitations on her ability to work stemming from her headaches at her hearing or when she filed for DIB, and on several disability report forms, Plaintiff failed to list migraine headaches among her conditions that limited her ability to work. (Tr. at 118-29, 131-37, 143-46, 149-54.)  Finally, Plaintiff testified that if it were not for her hip and back pain, she could work, which indicates that her headaches were not limiting.  (Tr. at 33.)

Because Plaintiff failed to prove that any headaches from which she suffered resulted in limitations on her ability to work, the ALJ was not required to list headaches as a "severe" impairment.[1]

_____

[1] Plaintiff cites *Hill v. Astrue*, 2011 WL 4900032 (M.D. Ala. Oct. 14, 2011), in which the district court held that the ALJ erred by failing to make any reference to the fact that the plaintiff suffered from depression and migraine headaches, despite the record before him being replete with such evidence.  *Id.* at *5.  The court stated that the ALJ "did not mention Hill's depression in his disability determination, and thus, he makes no findings about whether the depression constitutes a severe impairment."  *Id.* at *4.  *Hill* is not instructive because, in contrast here, the ALJ specifically considered Plaintiff's complaints of headaches as an impairment and the

B.     The ALJ's Finding at Step Three that Plaintiff's Impairments Did Not Meet Listing 12.04

Plaintiff next argues that the ALJ's decision is not supported by substantial evidence because her mental impairments meet section 12.04 of the Listing of Impairments.  A claimant may prove disability if she shows at step three of the sequential evaluation that her impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specified criteria of the Listings." *Wilson*, 284 F.3d at 1224.  Listing 12.04 describes affective disorders which are characterized by "disturbance of mood, accompanied by a full or partial manic or depressive syndrome" and provides that the required level of severity for these disorders can be established by satisfying the requirements of parts A and B or the requirements of part C of the listing.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.

Plaintiff does not allege whether she met the requirements in both the A and B

---

headaches' effect, or lack thereof, on her ability to work.  (Tr. at 50-57.)  *See Perry v. Astrue*, 280 F. App'x 887, 894 (11th Cir. 2008) ("Because the ALJ found that Perry was not disabled after enumerating and evaluating all of the impairments and symptoms alleged and explaining his reasoning based on the record and the law, any error the ALJ might have made by not specifically identifying at step two which impairments he found to be severe did not deprive us of the ability to evaluate the ALJ's legal reasoning based upon the record.").

criteria of Listing 12.04 or the C criteria.  (Doc. 9 at 23-27.)  Assuming Plaintiff adequately raised the issue, she cannot demonstrate the B or C criteria.

The B criteria require marked difficulties in two categories of functioning: activities of daily living and social functioning, or maintaining concentration, persistence, or pace.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.  A claimant may also satisfy the B criteria by demonstrating marked difficulties in one category and repeated episodes of decompensation, each of extended duration.  *Id.*  The record evidence in this case did not demonstrate more than moderate limitations in the above-referenced areas.  (Tr. at 52.)  Plaintiff reported to an agency employee in 2007 that her depression was controlled by medication and did not prevent her from working.  (Tr. at 129.)  She also testified that, absent back and hip pain, she could work.  (Tr. at 33.)  On September 12, 2007, Dr. Dehryl Mason, a consultative examining psychologist, examined Plaintiff and reviewed the available medical evidence of record.  (Tr. at 278-81.)  Dr. Mason's diagnostic impression was bipolar disorder, not otherwise specified, and anxiety disorder, not otherwise specified.  (Tr. at 281.)  Plaintiff denied any history of mental health treatment, denied any past problems during employment, and her mental status examination showed sustained attention was adequate, recent and remote memory appeared adequate, she had moderate difficulty relating to others, and

13

her adjustment to normal day-to-day situations appeared fair. (Tr. at 280-81.) Dr. Andrade noted in September 2008 that Plaintiff's mood, mental status, and capacity for sustained mental activity were normal. (Tr. at 345-46, 348.) Due to Plaintiff's "history of depression and questionable bipolar disorder," Dr. Frederick Feist examined Plaintiff during her hospitalization in September 2008 for an intractable headache. (Tr. at 499-504.) Dr. Feist diagnosed Plaintiff with depressive disorder but noted no functional limitations. (Tr. at 503-04.) These minimal clinical findings do not show more than moderate limitations in the B criteria.

The C criteria require a showing that Plaintiff either experienced repeated episodes of decompensation, each of extended duration, such that even a minimal increase in mental demands or change in her environment would be predicted to cause her to decompensate; or she had a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning" and "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* at § 12.00(c). They "may be inferred from medical records showing significant

alteration in medication [] or documentation of the need for a more structured psychological support system," such as hospitalizations.  *Id.*  However, the record contains no evidence that Plaintiff experienced any episodes of decompensation, let alone episodes of repeated and extended duration, which means "three episodes within 1 year, or an average of once every 4 months, each lasting at least two weeks." *Id.* at 12.00(c).

Likewise, there is no evidence that Plaintiff's mental health condition resulted in such marginal adjustment that even a minimal increase in mental demands or change in her environment would be predicted to cause her to decompensate.  *Id.* at § 12.04( c).  Indeed, Plaintiff experienced a significant change in her environment and increase in mental demands when she delivered twins in August 2009, yet there is no indication in the record before the ALJ that Plaintiff decompensated. (Tr. at 170-679.) Further, there is no evidence that Plaintiff was unable to function outside a highly supportive living arrangement, as she lived in a home with her family.  (Tr. at 124.) Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal section 12.04 of the Listing of Impairments.  (Tr. at 52-53.)

C.    Adverse Inference Drawn From Lack of Medical Evidence in the Record

Plaintiff also takes issue with the ALJ's finding that "[t]he record reflects little actual treatment for the alleged mental impairments." (Tr. at 55.) Plaintiff argues that the ALJ improperly drew adverse inferences from the lack of evidence of medical treatment in the record, and that the ALJ should have allowed her to explain the absence of medical evidence.

The Court notes that Social Security Rule 96-7p provides that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . ." Further, the Eleventh Circuit has held that poverty excuses non-compliance with a treatment regimen. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). In this case, however, Plaintiff claims she could not afford treatment for her mental condition (tr. at 35, doc. 9 at 20-22), but the record demonstrates that Plaintiff consistently sought treatment for her physical complaints. (Tr. at 170-679.) The record also reflects that Plaintiff was treated with medication for her mental impairments, and that no doctor ever recommended that Plaintiff seek more aggressive modes of treatment or therapy, which demonstrates that medication controlled her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v).

Even if there was outstanding evidence of Plaintiff's failure to follow medical

16

treatment in this case and a need for an explanation of such, the Eleventh Circuit has held that "if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). *See also Brown v. Comm'r of Soc. Sec.*, 2011 WL 1643539, at *3-4 (11th Cir. Apr. 27, 2011) (holding no error in ALJ's failure to consider reasons for gap in treatment when "[t]he main reason why the ALJ discredited Brown's testimony was that his assertions of disabling pain were not supported by the medical evidence in the record, which described a relatively conservative pattern of treatment"). Here, the ALJ cited several factors for discrediting Plaintiff's complaints, including the weakness of the existing medical evidence, her ability to care for twin infants, her sporadic work history, and the fact that no treating or examining source opined that Plaintiff had any limitations greater than the ALJ found or that she was disabled, while one physician, Dr. Alex Hunt at GRMC, even released her to work without any restrictions in August 2009. (Tr. at 55.) As such, the ALJ's omission of a discussion of Plaintiff's ability to afford mental health treatment was at most harmless error, and substantial evidence supported the ALJ's decision. *See Ellison*, 355 F.3d at 1275; *Brown*, 2011 WL 1643539, at *3-4.

17

D.     Hypothetical Question Posed to the VE

Plaintiff next finds fault with the ALJ's assumption in the hypothetical question that the individual could perform light work because she asserts that "[t]here is no medical evidence that [Plaintiff] can work." (Doc. 9 at 18.)  In making this argument, Plaintiff confuses the burdens of proof in this case.  She must prove that she was disabled within the meaning of the Social Security Act by providing evidence to support her allegations of disabling pain and other symptoms.  *See* 42 U.S.C. § 423(d)(5)(A).  Only after she proves that she cannot perform her past relevant work does the burden shift to the Commissioner to demonstrate that there are a significant number of jobs that Plaintiff can perform.  *See id.*  As discussed below, because Plaintiff failed to prove that she was not capable of performing at least a limited range of light work, the ALJ did not err in assuming that the individual in the hypothetical could do so.

Plaintiff was involved in a motor vehicle accident that resulted in a "minimal crack" in her pelvis in August 2006. (Tr. at 170-97, 278.)  She was treated only with pain medication.  (Tr. at 170-97.)  In November 2006, an MRI revealed "just a little residual welling and effusion around the hip."  (Tr. at 200).  Plaintiff's orthopedist, Dr. William Stewart, described her complaints as "minor," found no surgically

addressable problems, and recommended "just some mild analgesic[s]." (Tr. at 200.) It was not recommended that Plaintiff follow up with an orthopedist. (*Id.*) In February 2007, Dr. Stewart noted that Plaintiff had "a minimally positive femoral stretch and minimally positive sciatic." (Tr. at 199.) However, the doctor could not "prove anything from an orthopedic point of view" but could "clearly tell [. . .] that the problem is not originating in the hip." (Tr. at 199.)

Plaintiff returned to the emergency room at GRMC on March 12, 2007, complaining that she had fallen and injured her left hip, but she was diagnosed with only a bruise and discharged with instructions to apply ice to her injury and take naproxen for pain. (Tr. at 225-33.) Plaintiff continued to complain of hip pain, but Dr. Danny R. Sparks noted on April 30, 2007, that Plaintiff reported that her medication and therapy helped and she was "able to do a lot more." (Tr. at 263.) She had no pain with motion, the range of which was normal, and she had only a slight limp. (Tr. at 263.) Dr. Spark's examination of Plaintiff's left hip revealed normal alignment, no tenderness on palpation, normal sensation, and no neurological deficits, and a lumbar spine exam was completely normal, with pain being "100% in [her] hip." (Tr. at 266-67.) In September of 2007, Dr. Sparks specifically noted that his examination of her hip revealed "no signs of instability." (Tr. at 266, 278.) X-rays of

her lumbar spine revealed no obvious instability and only developing degenerative disc disease. (Tr. at 264.) Though Plaintiff reported another fall in June of 2007, Dr. Sparks stated that x-rays continued to be normal and therapy had "helped a little." (Tr. at 262.) Dr. Sparks noted Plaintiff had a good range of motion in her hips, and her treatment should consist of medications and time. (Tr. at 262.) In April of 2008, Dr. Sparks again noted that x-rays and a bone scan were normal, and, therefore, he suspected a labral tear caused Plaintiff's reported pain. (Tr. at 306-07.) However, an MRI revealed slight L4-5 bulging on the left without herniation but no labral tear. (Tr. at 305, 330-37.) Dr. Sparks therefore referred her to a neurosurgeon. (Tr. 304.) The neurosurgeon, Dr. Thomas L. Francavilla, however, opined that Plaintiff's MRI did not explain her symptoms, and he recommended a myelogram. (Tr. at 316.) The myelogram revealed only mild lumbar scoliosis and was essentially normal. (Tr. at 350.)

On September 4, 2008, Plaintiff complained of lower back and left hip pain to Dr. Andrade. (Tr. at 347.) However, a physical examination revealed Plaintiff had full strength in all extremities and in her cervical and lumbar spine, normal and symmetrical muscle tone and size, no movement disorders, intact sensation, normal reflexes, asymptomatic straight leg raising, no sciatic notch tenderness, negative

Romberg's test, normal gait, and no tenderness or muscle spasms. (Tr. at 347-48.)
Dr. Andrade recommended Plaintiff avoid cigarette smoke, reduce her weight, and
follow a conditioning program. (Tr. at 349.) On September 9, 2008, Dr. Andrade
stated that a lumbar spine CT and myelogram were normal, noted the same
examination findings as on September 4th, and added to his recommendations that
Plaintiff initiate physical therapy. (Tr. at 344-46.) Dr. Andrade's treatment notes
indicated that Plaintiff's work status was "return to regular duty." (Tr. at 246.)

Plaintiff returned to Dr. Sparks' office on May 26, 2009. (Tr. at 674.) She
reported that she still had "pain at times" in her left hip and had given birth to twins
since she last saw Dr. Sparks. (Tr. at 674.) Dr. Sparks noted Plaintiff had full range
of motion without pain in her left hip, and x-rays revealed no acute changes in or
fractures of her hip. (Tr. at 674.) Dr. Sparks felt Plaintiff must have had a labral tear.
(Tr. at 679.) He again ordered a bone scan, which was normal. (Tr. at 675-76.)

The minimal objective findings and lack of limitations opined by treating and
examining sources in the evidence before the ALJ failed to establish that Plaintiff
could not perform a limited range of light work.[2]

---

[2] Plaintiff mentions in passing that the VE's testimony does not constitute substantial
evidence on which the ALJ may base his decision because the hypothetical question did not
consider her headaches. In order for the testimony of a VE "to constitute substantial evidence,
the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."
*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, as noted above in part III.A, *supra*,

As for Plaintiff's mental impairments, the ALJ found Plaintiff's bipolar and anxiety disorders were severe impairments and assessed limitations that accounted for her moderate limitations in her ability to function socially and maintain concentration, persistence, and pace.  (Tr. at 52-53.)  As noted in part III.B, *supra*, the medical evidence of record and Plaintiff's own statements establish that her mental impairments only moderately limited her.  Plaintiff failed to establish she had limitations beyond those the ALJ found, and substantial evidence supports the mental RFC finding. (Tr. 53.)

E.     Additional Evidence Considered by Appeals Council

Plaintiff also argues that, when taking into account the additional evidence considered by the Appeals Council, the denial of benefits was not based on substantial evidence.  The additional evidence considered by the Appeals Council and made a part of the record before this Court is found at Exhibits 19F through 27F.  (Tr. at 680-857.)  Plaintiff only points specifically, however, to two pieces of evidence she submitted to the Appeals Council after the ALJ's August 17, 2009, decision: 1) a

---

the clinical findings in the record do not substantiate Plaintiff's claims of disabling headaches. Plaintiff relies on *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985), in which the Eleventh Circuit held that the ALJ's decision was not based on substantial evidence because the ALJ's hypothetical question failed to assume the existence of the claimant's psychological problems, despite finding these impairments to be severe at step two.  The case is distinguishable because here, the ALJ did not find Plaintiff's headaches to be a severe impairment.  (Tr. at 50.)

report by Dr. Davis R. Wilson, who performed a psychological evaluation of Plaintiff on December 2, 2009, at her attorney's request (tr. at 681-85); and 2) a report by Dr. Daniel S. Prince, a rheumatologist, who her attorney also referred her to for a disability evaluation on December 21, 2009. (Tr. at 774-75.) Specifically, Plaintiff contends that Dr. Wilson's psychological evaluation showed that she had bipolar disorder and Dr. Prince's opinions substantiated a finding that Plaintiff was disabled due to fracture of the left hip, injuries to her spine, and headaches.

When a claimant submits additional evidence to the Commissioner and argues to the Court that the Appeals Council erred in denying review, the Court must determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007). *See also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") Importantly, any records or opinions relating to the period after the ALJ's decision on August 17, 2009, are irrelevant to the period under consideration by the ALJ. *See* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where

it relates to the period on or before the date of the administrative law judge hearing decision."); *Ingram*, 496 F.3d at 1261 (chronologically relevant period for Appeals Council review is through date of ALJ's decision).

With the exception of one visit to the GRMC in August 2009 (tr. at 686-705),[3] the records found at Exhibits 19F through 27 F were generated between October 2009 and April 2011, making them irrelevant to the period at issue before the ALJ. (Tr. at 680-85, 706-857.) Even if chronologically relevant, Dr. Wilson's December 2009 report would not have been entitled to controlling weight by the ALJ, as he was a one-time examiner. The weight afforded a one-time examining source's opinion on the issues of the nature and severity of a claimant's impairments depends upon, among other factors, the evidence the medical source presents to support his opinion and how consistent the opinion is with the record as a whole. *See* 20 C.F.R. § 404.1527; SSR 96-2p. Dr. Wilson found Plaintiff had impaired focus, mental control, and short term memory and opined that it would be very difficult for her to function in a work setting and she would have problems with the social and problem solving aspects of

---

[3] This record, although chronologically relevant, does not document any additional limitation or impairment that the ALJ did not consider. Plaintiff, then pregnant with twins, visited the emergency room on August 8, 2009, complaining of a headache and abdominal pain. (Tr. at 686-705.) A CT scan of Plaintiff's brain was normal, and she was diagnosed with acute sinusitis and abdominal pain of indeterminate etiology, prescribed an antibiotic, and released to work without restrictions. (Tr. at 695, 702, 704.)

work. (Tr. at 685.) His report is inconsistent with the findings of several other physicians in the record, as discussed *supra*, including Dr. Mason, who found that Plaintiff was cooperative, sustained adequate attention, and her recent and remote memory were adequate, and Dr. Andrade, who noted that Plaintiff's mood, mental status, and capacity for sustained mental activity were normal and discharged her to regular work duty. (Tr. at 33, 129, 278-81, 345-48, 830). Dr. Wilson's opinion is also inconsistent with Plaintiff's own statement that her depression was controlled by medication and did not prevent her from working, and her testimony that absent back and hip pain, she could work. (Tr. at 33, 129.)

Nor would Dr. Prince's December 2009 opinions have been entitled to controlling weight by the ALJ. Dr. Prince, a one-time examiner, noted that Plaintiff was "reasonably well-managed," used no assistive devices, and had no remarkable physical examination findings other than a 40% reduction in Plaintiff's cervical spine motion and a 30% decreased left hip mobility. (Tr. at 775.) He indicated that he needed to review all of Plaintiff's medical records to "defin[e] the full extent of her disabling problems," yet he opined that she was completely and totally disabled. (Tr. at 773, 775.) Dr. Prince's opinion was not accompanied by evidence that supported his restrictive limitations, he indicated that he needed more evidence to issue an

opinion, and his opinion regarding Plaintiff's ability to perform work-related functions was at odds with Plaintiff's own statement that she could stand for two hours, walk 30 minutes to one hour, and sit for 30 minutes. (Tr. at 118, 773-78.) *See* 20 C.F.R. § 404.1527; SSR 96-2p (evidence used to support opinion and consistency with entire record as factors used in evaluating one-time examiner's opinion). Further, Dr. Prince's opinion that Plaintiff was disabled is a legal opinion that is reserved for the Commissioner, and thus that opinion would not be entitled to any weight. *See* 20 C.F.R. § 404.1527(e). Accordingly, the Appeals Council properly found that neither Dr. Wilson's nor Dr. Prince's opinions provided any basis for reviewing the ALJ's decision. (Tr. at 1.)[4]

F.      Motion to Remand Pursuant to Sentence Six of § 405(g)

The Court will now address Plaintiff's separately-filed motion to remand her case to the Commissioner. (Doc. 12.) After the ALJ issued his decision on August 17, 2009, denying Plaintiff's claim, Plaintiff requested review by the Appeals Council on

---

[4] Plaintiff also makes the argument that the Appeals Council had a duty to articulate how it considered the additional evidence. (Doc. 9 at 14-20.) The regulations do not impose an articulation duty on the Appeals Council when it denies a request for review, *see* 20 C.F.R. § 404.970, and Plaintiff has not cited any statute, regulation, or Eleventh Circuit precedent imposing such an articulation duty. *But see Higginbotham v. Barnhart*, 405 F.3d 334, 335 n.1 (5th Cir. 2005) (noting regulations do not require Appeals Council to make specific findings about additional evidence).

October 14, 2009.  (Tr. at 21.)  On November 11, 2009, Plaintiff requested a 60-day extension to submit additional evidence, and the Appeals Council notified Plaintiff and her counsel on March 11, 2010, that she could send new and material evidence to the Appeals Council within 25 days of the date of the letter.  (Tr. at 8, 18.)  Plaintiff submitted additional evidence, both before and after the deadline set by the Appeals Council.  The Appeals Council then rendered its decision on July 28, 2011, listing as supplemental exhibits only the evidence that is in the record before this Court, i.e., those records found at Exhibits 19F through 27F (tr. at 680-857), and notifying Plaintiff that it considered the evidence before it but found no reason to review the ALJ's decision.  (Tr. at 1-6, 20-21, 680-857.)

Plaintiff now alleges in her motion that she submitted additional evidence to the Appeals Council that the Appeals Council did not include in the record.  She attaches eight exhibits to her motion, labeled A through H, that she asserts contain copies of "lost" evidence that entitle her to a remand.  Plaintiff alleges that she faxed or mailed these items of medical evidence and/or letter briefs to the Appeals Council on March 17, 2010; July 19, 2010; July 21, 2010; July 26, 2010; August 11, 2010; December 14, 2010; June 24, 2011; and July 29, 2011.  (Docs. 9 at 1-2; 12 at 1.)  Notably, all but one of these exhibits were submitted after the expiration of the 25-day deadline the

Appeals Council established on March 11, 2010.

The standard by which the Court is to evaluate Plaintiff's request is somewhat in dispute.  "Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.'"  *Ingram*, 496 F.3d at 1261.  A sentence four remand is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record."  *Id.* at 1269.  Remand to the Commissioner is proper under sentence six when new and material evidence that was **not** incorporated into the administrative record for good cause comes to the attention of the district court.  *Id.* at 1267; *see Milano v. Bowen*, 809 F.2d 763, 766-67 (11th Cir. 1987) (ordering sentence six remand based on evidence first properly submitted to the district court).

Plaintiff originally requested remand pursuant to sentence four of § 405(g) because she attempted to submit Exhibits A through H to the Appeals Council.  Commissioner responded that Plaintiff is actually seeking a sentence six remand for consideration of new evidence that was not submitted to the ALJ or the Appeals Council.  Indeed, although the Appeals Council listed other articles of evidence that

it considered in its decision, among them those discussed in section III.E., *supra*, it did not include the eight articles of evidence at issue that Plaintiff now asserts entitle her to a remand.[5]  In her reply brief in support of remand, Plaintiff states: "Counsel considers the motion a sentence 4 remand because the records were actually submitted to the Appeals Council.  In the alternative, the Court could remand pursuant to sentence 6 because the records are being produced to the Court for the first time."  (Doc. 15 at 1.)  Plaintiff thus apparently concedes that sentence six of § 405(g) is an appropriate standard to be applied in evaluating her request for remand.

The Court agrees with the parties that sentence six is the appropriate standard. In *Milano*, the Eleventh Circuit held that remand under sentence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have any opportunity to consider because the evidence was not timely submitted to the Appeals Council.  809 F.2d at 764-67.  In that case, the plaintiff had submitted additional evidence to the Appeals Council one day after the deadline for review.  *Id*. at 765. Because he did not timely submit the new evidence, "[t]he supplemental items submitted to the Appeals Council by [the plaintiff] were neither included in the

---

[5] The Appeals Council did not specify whether it received the evidence attached to Plaintiff's motion to remand, and therefore it is impossible to say whether the evidence was lost or ignored as untimely.  (Tr. at 1-6.)

29

administrative record nor mentioned when the request for review was denied." *Id.* As the Appeals Council did not consider the plaintiff's untimely evidence, the Eleventh Circuit treated the evidence as if it had been first presented to the district court and held that the district court properly evaluated the case under sentence six. *Id.*

Similarly here, Plaintiff apparently attempted to submit the evidence at issue to the Appeals Council, but it was not incorporated into the administrative record, and there is no indication from the Appeals Council's order, dated July 28, 2011, that it considered the evidence. (Tr. 1-6.) As such, it is extra-record evidence that was not considered in the administrative proceedings, and the Court will evaluate it under the standard for remand pursuant to sentence six of 42 U.S.C. § 405(g). *See Ingram*, 496 F.3d at 1268-69 (stating that evidence outside of administrative record should be considered under sentence six).

Remand is only appropriate under sentence six if this Court finds the claimant has proven "that (1) there is new, non-cumulative evidence, (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable probability that it would change the administrative result, and (3) that there is good cause for the failure to submit the evidence at the administrative level." *Keeton v. Dep't of Health*

*& Human Servs.*, 21 F.3d 1064, 1067-68 (11th Cir. 1994) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988)).  The Commissioner only argues that Plaintiff has not met her burden with respect to the second requirement for remand.[6]  In response, Plaintiff failed to address the sentence six remand standard or explain why the evidence attached to her motion is material in any way.  (Docs. 12, 15.)  Such perfunctory treatment of this issue is tantamount to waiver.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").  Nevertheless, the Court will briefly discuss why Plaintiff's new evidence does not fulfill the requirements for remand under sentence six of § 405(g), taking the exhibits in the order in which they are numbered and presented in Plaintiff's motion for remand.

Exhibit A is a letter brief to the Appeals Council further addressing Plaintiff's arguments in favor of remand.  (Doc. 12-1.)  While Plaintiff's letter summarizes

---

[6] The Commissioner acknowledges that the evidence is "new," with the exception of Exhibit C and portions of other exhibits that contain evidence previously incorporated into the record and thus considered by the ALJ and the Appeals Council, discussed further *infra*.  As for the third requirement, given that Plaintiff apparently attempted to submit the evidence to the Appeals Council, the Commissioner concedes that her actions do not "evince a bad faith attempt to manipulate the administrative process by attempting to withhold evidence with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled." (Doc. 14 at 17) (quoting *Milano*, 809 F.2d at 767).

medical evidence, Plaintiff's arguments are not evidence, and Exhibit A does not entitle Plaintiff to remand.  Exhibit B contains 2008 medical records from Riverview Regional Medical Center that mainly document acute conditions that Plaintiff never alleged were disabling, such as acute pelvic inflammatory disease during her pregnancy, first degree burns suffered when she slipped while carrying a basin of hot water, and an acute urinary tract infection. (Doc. 12-2.)  The exhibit contains a record of Plaintiff's complaint of a severe headache, but this evidence is similar to other evidence in the record and fails to demonstrate that Plaintiff had any additional limitations stemming from her headaches, as previously discussed in part III.B.  (Tr. at 154, 495-502, 539-42.)  Exhibit C is not "new," as it contains evidence previously incorporated into the record and thus considered by the ALJ and Appeals Council. (*Compare* doc. 12-3 *with* tr. at 344-49.)

Exhibit D documents Plaintiff's treatment at the University of Alabama ("UAB") Hospital after she was transferred there from GRMC for further evaluation of her headaches in September 2008. (Doc. 12-4.)  The records are largely cumulative of evidence appearing in the administrative transcript that establishes that Plaintiff experienced headaches in September 2008 following a myelogram.  (Tr. at 154, 202, 266, 314, 321, 363, 402-612, 627.)  Exhibit E consists of treatment notes from

Plaintiff's primary care physician, Dr. Akisanya, which primarily document Plaintiff's complaints of acute illness and conditions that she does not allege are disabling. (Doc. 12-5.) Dr. Akisanya's August 2008 through December 2009 treatment notes indicate Plaintiff sought treatment for bronchitis, sinusitis, high blood pressure, headaches, reflux, worsening depression, and back pain "relieved by pain med/relaxant." (Doc. 12-5, pp. 4-13.) Treatment notes dated August 19 and October 28, 2010, do not relate to the period at issue, which ended on August 17, 2009, the date of the ALJ's decision and thus are irrelevant. (Doc. 12-5, pp. 14-17). *See* 20 C.F.R. § 404.970(b); *Ingram*, 496 F.3d at 1261.

Exhibit F consists of treatment notes documenting two encounters at Gadsden Surgery Center in May of 2008. (Doc. 12-6). The records reflect that Plaintiff complained of back problems, was diagnosed with lumbar radiculopathy, and received lumbar epidural steroid injections. (Doc. 12-6.) She was ambulatory, alert, fully oriented, calm, and reported her pain as rating at five to six on a one to ten scale before and after the injections, and moved all extremities well. (Doc. 12-6.) These records do not demonstrate abnormal clinical findings or limitations that would preclude Plaintiff from performing a limited range of light work. (Tr. 53.) Accordingly, these treatment notes were also unlikely to change the administrative result and thus do not

warrant remand.

The evidence found at Exhibit G includes treatment notes from several different sources, but the evidence either appears in the transcript and thus does not contain "new" evidence subject to a sentence six analysis or is dated long after the period at issue in this case and is thus irrelevant. (Doc. 12-7.) Exhibit G does contain a Mental Health Source Statement form completed by Dr. Benjamin Carr on February 5, 2010, in which he checked boxes indicating Plaintiff had no limitation on her ability to carry out very short and simple instructions, yet marked limitation in her ability to complete a normal workday and workweek and perform at a consistent pace. (Doc. 12-7, pp. 93-94.) Dr. Carr noted that Plaintiff was seen in his office on August 24 and September 8, 2009, and never returned. (*Id.*) Though his opinion was made well after the ALJ's decision, it could arguably relate to Plaintiff's condition at the relevant time period. (Tr. 45-57; Doc. 12-7, pp. 93-94.) However, Dr. Carr's opinion would not have been entitled to much weight, as treatment notes from Carr Mental Wellness indicate that Plaintiff actually saw Dr. Carr only once, at her first appointment, while Tami Sparks, a nurse practitioner, saw her during the first and second. (Tr. 828-31.) *See* 20 C.F.R. §§ 404.1502, 404.1527(d)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (noting doctor who examines a

claimant on only one occasion is not considered a "treating physician" and opinion from such a doctor is not entitled to great weight). Further, Dr. Carr did not specify what evidence he had considered in forming his opinions, nor did he offer any explanation or point to objective medical evidence in support of his conclusions. (Doc. 12-7, pp. 93-94.) *See Crawford*, 363 F.3d at 1159 ("A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.") (internal citations and quotations omitted). Dr. Carr's opinion actually reinforces the ALJ's observation that Plaintiff had received little actual treatment for her alleged mental impairments, by stating that "she was to return to [the] clinic in 1-2 weeks for further medication management after the last appointment, but has not returned." (Tr. 55; Doc. 12-7, p. 94.) Moreover, Dr. Carr's opinion is largely consistent with the ALJ's finding that Plaintiff could perform simple, unskilled work with few workplace changes and interact with the public, coworkers, and supervisors up to two hours in an eight-hour workday. (Tr. 53; Doc. 12-7, pp. 93-94.) Thus, Exhibit G would not potentially change the administrative result, and remand to consider the evidence is not warranted.

Finally, at Exhibit H, Plaintiff attaches records from Riverview and Northeast Orthopedic that are cumulative of other evidence appearing in the record or irrelevant

to the period at issue.  (Doc. 12-8.)  An admission record from Riverview dated June 23, 2009, provides no medical information other than that Plaintiff carried a diagnosis of possible stress fracture of the left hip. (Doc. 12-8, p. 7.) A whole body bone scan performed that day was negative (doc. 12-8, p. 7), which was no different from earlier bone scan results appearing in the record. (Tr. 338-39, 353.)

Much of the evidence submitted by Plaintiff is either not new or does not relate to the period at issue for which benefits were denied.  The remaining evidence that is chronologically relevant is not material for purposes of remand under sentence six of § 405(g).  As such, Plaintiff's motion is due to be denied.

V.    Conclusion

Upon review of the administrative record, and considering all of Ms. Jones' arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law.  Additionally, for the reasons stated in part III.F, *supra*, Plaintiff's Motion to Remand (doc. 12) will be denied.  A separate order will be entered.

Done this 29th day of October 2012.

36

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]